UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN ALEXANDER,

            Plaintiff,            Case No. 1:13-cv-1372

v.                                      Honorable Robert Holmes Bell

STATE OF MICHIGAN et al.,

            Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 et seq., and state law. Plaintiff has paid the entire filing fee. Under the Prison Litigation Reform Act, Pᴜʙ. L. Nᴏ. 104-134, 110 Sᴛᴀᴛ. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's action against Defendants Snyder, Hilfinger, Heyns, Killough, Martin and the Michigan Department of Licensing and Regulatory Affairs, Bureau of Commercial Services (LARA) for failure to state a claim and on immunity grounds. In addition, the Court will dismiss Plaintiff's § 1983 claims and RLUIPA claims for monetary damages against the

State of Michigan and the Michigan Department of Corrections (MDOC) on immunity grounds. Also, the Court will dismiss Plaintiff's RLUIPA claims against Defendants Hoffner and Tompkins on immunity grounds. The Court will serve the remainder of Plaintiff's action on Defendants Hoffner, Tompkins, State of Michigan and MDOC.

## Discussion

I.  Factual allegations

Plaintiff John H. Alexander-Bey presently is incarcerated at the Lakeland Correctional Facility. Plaintiff purports to bring a class action on behalf of himself and other similarly situated prisoners, who are members of the "Reincarnate Temple, MSTA, Inc." (Compl., docket #1, Page ID#2; Mot., docket #3, Page ID#129.) In his *pro se* complaint, Plaintiff sues the State of Michigan, LARA[1] (LARA), Michigan Department of Corrections (MDOC), LARA Director Steven Hilfinger, Michigan Governor Rick Snyder, and the following employees of the MDOC, in their official and individual capacities: Director Daniel Heyns, Special Litigation employee Norma Killough, Chaplain Administrator Michael Martin, Warden Bonita J. Hoffner and Chaplain D.A. Tompkins.

Plaintiff alleges that he is the "Michigan Republic Representative for the Moorish Science Temple of America, Inc., of the Reincarnate Temple, MSTA" (Reincarnate Temple, MSTA). (Compl., docket #1, Page ID#11.) Plaintiff claims that all Moorish Americans do not practice the same form of Islam, and provides:

> Ismaili, the sacred way of the Plaintiffs also known as "Ismaili Sevener's," is the Islam of the Muurs. That the Moorish American under the 1926 corporate and

---

[1] In his complaint, Plaintiff names this Defendant as the Bureau of Commercial Services. The Bureau of Commercial Services changed its name to the Corporations, Securities and Commercial Licensing Bureau. The Corporations, Securities and Commercial Licensing Bureau is a division of the Department of Licensing and Regulatory Affairs (LARA). *See* https://www.michigan.gov/lara/0,4601,7-154-28077---,00.html. The Court will refer to this Defendant throughout this opinion as LARA.

> divine Charter are representatives of the original Moorish Science Temple of America, Inc., and sacred community and religious estate who have been deprived of bona fide recognition and the right to practice our faith; for we are enrollee(s) of the Washitaw Nation of Muurs United Nations IPO #215/93 U.S. Land Grants No. 922 & 923  1802 . . . and are original members of the Chicago Moorish Temple(s) within the Prophet's biological Washitaw family of [Muslims], in society have our Religious Services on Fridays from 8:00 pm until 10:00 pm and Sunday school from 9:00 AM until 1:00 PM. . . . .

(*Id.* at Page ID#11.)   Plaintiff states that the Ismaili Muslim is separate from the "Sunni religion of Islam and as well other Moorish Science Temples in America" and protected under the United States Land Patents for the Washitaw Nation.  (*Id.* at Page ID#7.)  Plaintiff has filed grievances with the MDOC and complaints with LARA and the Office of Legal Affairs to have his religion recognized as a separate religion to no avail.  (*Id.* at Page ID#9.)

Plaintiff alleges that MDOC prison officials have retaliated against Washitaw Ismaili Muslim inmates for filing grievances by harassing them, confiscating and/or destroying "religious and nationality documents" and other materials, and by transferring them to other prisons.  (*Id.* at Page ID#10.)  Plaintiff also states that Ismaili Muslims are denied Friday prayer, Sunday school, sacred ceremonies, the wearing of religious medallions and attire, and the accommodation of a vegetarian diet in violation of his First Amendment rights.  Plaintiff further claims that MDOC prison officials have issued misconduct tickets, increased security levels and seized property without hearings and placed Ismaili Muslims in segregation for seeking permission to worship in violation of the Fourteenth Amendment.

In addition to the above constitutional claims, Plaintiff lists the following nine claims (summarized):

1. Plaintiff states that Governor Snyder, MDOC Director Heyns, LARA Director Hilfinger, Chaplain Martin and other MDOC officials have violated

   the Establishment Clause and MDOC Policy Directive 05.03.150, ¶C[2] because Ismaili Muslims are compelled to attend other religious services.

2.  Plaintiff claims that Governor Snyder, MDOC Director Heyns, wardens, chaplains and prison guards and other state employees acted in concert under 42 U.S.C. § 1985(3) and 42 U.S.C. §1986 to violate his constitutional rights by failing to establish minimum standards for recognition of all religious groups.

3.  Plaintiff asserts that LARA Hilfinger conspired with the Chaplainry Board to disregard Plaintiff's November 30, 2006 registration and allow an amendment to the Washitaw's registration by an unauthorized individual in violation of the "[Louisiana] Cession Treaty of 1803 and the First & Fifth Amendments of the U.S. Constitution." (*Id.*, Page ID#13.)  Plaintiff also states that Hilfinger failed to correct the mistake despite repeated attempts by Plaintiff.  Plaintiff further provides that Hilfinger along with the MDOC's Chaplainry Board Members negatively influenced Governor Snyder and MDOC Director Heyns so the Ismaili Muslims could not obtain the benefits of their registration as a foreign corporation.

4.  Plaintiff argues that MDOC Director Heyns and Chaplain Administrator Martin conspired to deprive Plaintiff of his First Amendment rights and Article III of the Louisiana Treaty of 1803 by failing to recognize the Reincarnate Temple, MSTA and by not allowing Plaintiff to have religious services.

5.  Plaintiff complains that Special Litigation Officer Killough and the Chaplainry Department conspired to deprive Plaintiff and other Ismaili Muslims of registering their religion with the U. S. Government.  Because of Defendant Killough's actions, Plaintiff states that articles, papers and other religious effects were confiscated from Plaintiff in violation of his First, Fourth, Fifth, Ninth and Fourteenth Amendment rights.  Plaintiff further argues that Defendants conspired to deny Plaintiff of access to his religion by not allowing Ismaili Muslims to meet or assemble privately.  Because Defendants allegedly destroyed religious and nationality documents without due process of law, Plaintiff claims that they violated his Fourteenth Amendment rights.

---

[2] The policy states that "[n]o employee, agent of the Department, or other prisoner shall proselytize, nor permit others to proselytize, any prisoner without his/her consent. No prisoner shall be discriminated against, or given preferential treatment, because of his/her religious beliefs or practices."  MDOC Policy Directive 05.03.150, ¶ C (effective Sept. 20, 2007).

6. Plaintiff asserts that Warden Hoffner and Chaplain Tompkins denied Plaintiff access to his religion and the use of religious symbols. Plaintiff also asserts a RLUIPA claim against "the MDOC and its respective agencies (Lakeland Correctional Facility's Officials)." (*Id.* at Page ID#17.)

7. Plaintiff argues that he was denied his First Amendment right to the free exercise of religion when Defendants refused to grant him religious accommodations, including the use of traditional sacred garments, medallions and sacred beads.

8. Plaintiff states that the MDOC prison facilities, chaplains and prisons guards have denied religious services for prison inmates of the Reincarnate Temple, MSTA, in violation of his First and Fourteenth Amendment rights and the State of Michigan's constitution.

9. Plaintiff claims that the Reincarnate Temple, MSTA, should be recognized under the Full Faith and Credit Clause and 42 U.S.C. § 1981.

(*Id*. at Page ID##12-16.)

For relief, Plaintiff requests declaratory and injunctive relief as well as monetary damages.

II. Class Action

On December 27, 2013, Plaintiff filed a motion for class certification (docket #3) to bring this action along with similarly-situated prisoners, who are members of the Reincarnate Temple, MSTA. Plaintiff, however, is the only person who signed the complaint. Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. Thus, absent class certification, he may not bring claims on behalf of any other prisoners.

For a case to proceed as a class action, the Court must be satisfied on a number of grounds, including the adequacy of class representation. *See* Fed. R. Civ. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99–2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000); *Ballard v. Campbell*, No. 98–6156, 1999 WL 777435, at *1 (6th Cir. Sept. 21, 1999); *Marr v. Michigan*, No. 95–1794, 1996 WL 205582, at *1 (6th Cir. Apr. 25, 1996). Accordingly, because Plaintiff is an incarcerated, *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Therefore, the Court will deny Plaintiff's motion for class certification (docket #3). Plaintiff may proceed in this action only with respect to claims that pertain to himself.

      III.    Immunity

          A.    **Section 1983**

Plaintiff may not maintain a § 1983 action against the State of Michigan, the MDOC and LARA. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity in § 1983, *see Quern v. Jordan*, 440 U.S. 332, 341

(1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Sixth Circuit has specifically held that the MDOC is absolutely immune from a suit under § 1983. *See, e.g.*, *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the MDOC and LARA) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Consequently, Plaintiff's § 1983 claim against the State of Michigan, the MDOC and LARA must be dismissed.

B.     **RLUIPA**

Plaintiff seeks declaratory and injunctive relief as well as monetary damages for alleged violations of RLUIPA purportedly against all of the Defendants.[3] Although that statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc–2(a), a claim for monetary damages against the State of Michigan, the MDOC and LARA, is not available under RLUIPA. In *Sossamon v. Texas*, ––– U.S. –––, 131 S.Ct. 1651 (2011), the Supreme Court held that RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. Thus, Plaintiff's RLUIPA claim for monetary damages against the State of Michigan, the MDOC and LARA and the other Defendants in their *official* capacities is barred by sovereign immunity.[4] *See Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) (holding that the Eleventh Amendment bars RLUIPA claims for money damages against states and state employees in their official capacities). Consequently, the State of Michigan, the MDOC and LARA, and Defendants Snyder, Hilfinger,

---

[3] The individual Defendants are employed by the State of Michigan (acting through the MDOC and LARA), and, thus, are state employees.

[4] The Court will address RLUIPA claims against individual Defendants in their individual capacities, *infra*.

Heyns, Killough, Martin, Hoffner and Tompkins in their *official* capacities are immune from Plaintiff's claim for monetary relief.

    IV.  <u>Failure to state a claim</u>

  A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

  A. **Conspiracy**

    1. Sections 1985 and 1986

Plaintiff claims that Governor Snyder, MDOC Director Heyns, wardens, chaplains, prison guards and other state employees[5] conspired under 42 U.S.C. §§ 1985(3) and 1986 by failing to recognize Plaintiff's religion. A violation of § 1986 requires a violation of Section 1985 as a necessary prerequisite. *Boddie v. Am. Broad. Cos. Inc.*, 694 F. Supp. 1304 (N.D. Ohio 1988). To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must establish the following four elements:

> (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). The § 1985 plaintiff also must demonstrate that the conspiracy was motivated by a class based animus, such as race. *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839

---

[5]The Court assumes that Plaintiff's assertion against state employees includes LARA Director Hilfinger. *See Haines*, 404 U.S. at 520.

(6th Cir. 1994); *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). Moreover, a plaintiff must plead a claim of conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95–1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95–1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan*, No. 94–2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's claim under § 1985 fails because he makes no allegation that his alleged mistreatment resulted from race-based animus. *See Radvansky*, 395 F.3d at 314. Further, Plaintiff's allegations of conspiracy are vague, conclusory and speculative. He alleges no facts that would support any of the elements of a claim of conspiracy. Accordingly, a § 1985 conspiracy claim fails.

Section 1986 imposes liability on those who have knowledge of the wrongs prohibited by § 1985 but failed to prevent them. *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992). Absent a violation of § 1985, a plaintiff may not maintain an action under § 1986. *See id.*; *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980). As Plaintiff failed to state a claim under § 1985, his claim under § 1986 against Defendants Snyder and Hilfinger also fails.

2. Section 1983

Plaintiff alleges that LARA Director Hilfinger conspired with the Chaplainry Board to allow an unauthorized amendment to Plaintiff's registration of the Reincarnate Temple, MSTA and failed to correct the mistake.  In addition, Plaintiff argues that MDOC Director Heyns and Chaplain Administrator Martin conspired to deprive Plaintiff of his First Amendment rights and Article III of the Louisiana Treaty by failing to recognize the Reincarnate Temple, MSTA and by refusing to allow Plaintiff to have religious services.  Further, Plaintiff complains that Special Litigation employee Killough conspired with the Chaplainry Board to deprive Plaintiff and other Ismaili Muslims of registering their religion with the U.S. Government.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's conspiracy claims are wholly conclusory. Plaintiff has not provided any allegations establishing a link between any of the Defendants nor has he established any agreement between them. Because Plaintiff's allegations of conspiracy are vague, conclusory and speculative, he fails to state a § 1983 conspiracy claim against Defendants Hilfinger, Heyns, Martin and Killough.

B.  **Establishment Clause and State Law**

Plaintiff asserts that Governor Snyder, MDOC Director Heyns, LARA Director Hilfinger, and Chaplain Administrator Martin violated the Establishment Clause and MDOC Policy Directive 05.03.150 for failing to recognize the Reincarnate Temple, MSTA.

"The Religion Clauses of the First Amendment provide: 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.' The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people. While the two Clauses express complementary values, they often exert conflicting pressures." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). " '[T]here is room for play in the joints between' the Free Exercise and Establishment Clauses, allowing the government to accommodate religion beyond free exercise requirements, without offense to the Establishment Clause."[6] *Cutter*, 544 U.S. at 713 (quoting *Locke v. Davey*, 540 U.S. 712, 718 (2004)).

In *Cutter*, the Supreme Court stated, " 'This Court has long recognized that the government may . . . accommodate religious practices . . . without violating the Establishment Clause.' " *Cutter*, 544 U.S. at 713–14 (quoting *Hobbie v. Unemployment Appeals Comm'n of Fla.*,

---

[6] Although applicable originally only against the federal government, the Establishment Clause has been incorporated against the States by the Fourteenth Amendment. *See Everson v. Bd. of Educ.*, 330 U.S. 1, 8 (1947).

480 U.S. 136, 144-145 (1987)). "[T]he Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). It is incredulous to suggest that Defendants Snyder, Hilfinger and Heyns coerced Plaintiff into participating in any religious practices or took any action establishing a state religion. There are several different religions that are practiced within the MDOC.[7] Accordingly, Plaintiff's First Amendment Establishment Clause claim against Defendants Snyder, Hilfinger and Heyns fails to state a claim.

To the extent Plaintiff suggests that Defendants Snyder, Hilfinger, Heyns and Martin violated MDOC Policy Directive 05.03.150, § 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants Snyder and Hilfinger violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim against Defendants Snyder and Hilfinger, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v.*

---

[7]For a full list of recognized religions, *see* Attachment A to MDOC Policy Directive 05.03.150 (effective July 26, 2013).

*HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim against Defendants Snyder, Hilfinger and Heyns will be dismissed without prejudice.

### C. Supervisory Liability

To the extent that Plaintiff implies that Defendants Snyder, Hilfinger, Heyns, Martin and Killough failed to correct the registration of the Reincarnate Temple, MSTA, Plaintiff fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Because Plaintiff suggests that Defendants

Snyder, Hilfinger, Heyns, Martin and Killough were responsible for the actions of their subordinates, he fails to state a claim against them.

### D.  RLUIPA

#### 1.  Individual-Capacity Claims

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).  It does so by limiting the burdens that a government may place on a prisoner's free exercise rights:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person —
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). RLUIPA also provides a cause of action against a government: "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* § 2000cc–2(a).  RLUIPA defines "government," in relevant part, as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law." *Id.* § 2000cc–5(4)(A)(i)–(iii).

Plaintiff specifically brought his claims against all individual Defendants in both their official and individual capacities.  As noted by the Sixth Circuit, it has not ruled on whether damages

are available against government defendants acting in their *individual* capacities. *Selby v. Caruso*, 734 F.3d 554, 561 (6th Cir. 2013) ("[O]ur court has not ruled on whether RLUIPA authorizes a prisoner to pursue damages against prison officials who are sued in their individual capacities . . . .") (citing *Heard v. Caruso*, 351 F. App'x 1, 13 n.5 (6th Cir. 2009)). However, every other appellate court that has addressed the issue has held that RLUIPA, as an exercise of Congress's Spending Clause power, does not authorize a claim for damages against state employees in their individual capacities. *See Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013)*; Stewart v. Beach*, 701 F.3d 1322, 1334-35 (10th Cir. 2012); *Sharpe v. Johnson*, 669 F.3d 144, 154–55 (3d Cir. 2012); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 327–28 & n. 23 (5th Cir. 2009); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1272–75 (11th Cir. 2007). On this basis, this Court routinely has held that RLUIPA does not provide a cause of action for damages against state actors in their individual capacities*. See, e.g.*, *Green v. Tudor*, 685 F. Supp.2d 678, 699 (W.D. Mich. 2010); *Wood v. Mich. Dep't of Corrs.,* No. 1:12-cv-1342, 2013 WL 2458390 (W.D. Mich. June 6, 2013); *Crump v. Prelesnik*, No. 1:10-cv-353, 2013 WL 1337790, at *1 n.1 (W.D. Mich. Mar. 29, 2013); *Hall v. Martin*, No. 1:10-cv-1221, 2012 WL 1579334, at *6 (W.D. Mich. Mar. 29, 2012); accord *Haight v. Thompson*, No. 5:11-cv-118, 2013 WL 1092969, at *8 (W.D. Ky. Mar. 15, 2013); *Aladimi v. Hamilton Cnty. Justice Ctr.,* No. 1:09–cv–398, 2012 WL 292587, at *18 (S.D. Ohio Feb. 1, 2012). Plaintiff, therefore, cannot bring a RLUIPA claim against the remaining Defendants in their individual capacities.

2. LARA

Plaintiff makes no allegations to implicate LARA in any unconstitutional activity. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.

*See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his RLUIPA action must be dismissed against Defendant LARA.

E. **Service**

At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to warrant service of his § 1983 claims against Defendants Hoffner and Tompkins and his remaining RLUIPA claims on Defendants State of Michigan and MDOC.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Snyder, Hilfinger, Heyns, Killough, Martin and LARA will be dismissed for failure to state a claim and on immunity grounds pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). In addition, the Court will dismiss Plaintiff's § 1983 claims and Plaintiff's RLUIPA claims seeking monetary relief against Defendants State of Michigan and MDOC on immunity grounds pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). Also, the Court will dismiss Plaintiff's RLUIPA claims against Defendants Hoffner and Tompkins for failure to state a claim and on immunity grounds pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will order service of the § 1983 claims on Defendants Hoffner and Tompkins and the remaining RLUIPA claims on Defendants State of Michigan and MDOC. Finally, the Court will deny Plaintiff's motion for class certification (docket #3).

An Order consistent with this Opinion will be entered.


Dated: June 11, 2014                              /s/ Robert Holmes Bell
                                                  ROBERT HOLMES BELL
                                                  UNITED STATES DISTRICT JUDGE